151 N.J. Super. 86 (1977)
376 A.2d 571
LEONARD CIPRIANO, PETITIONER-APPELLANT,
v.
DEPARTMENT OF CIVIL SERVICE OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted May 23, 1977.
Decided June 30, 1977.
*87 Before Judges CARTON, KOLE and LARNER.
Mr. Michael Critchley, attorney for appellant.
Mr. William F. Hyland, Attorney General of New Jersey, attorney for respondent (Ms. Erminie L. Conley, Deputy Attorney General, of counsel; Mr. Arnold Lakind, Deputy Attorney General, on the brief).
The opinion of the court was delivered by CARTON, P.J.A.D.
Appellant Leonard Cipriano appeals a determination of the Civil Service Commission voiding his permanent status in the job title of Operator, Refrigeration Services, in the Department of Labor and Industry.
Cipriano was employed in a temporary capacity as a Safety Inspector in the Department of Labor and Industry from August 4, 1969 until February 15, 1972, when he was laid off. In March 1972 the Department rehired him as a Safety Inspector under the Federal Emergency Employment Act (EEA). Emergency Employment Act of 1971, § 1 et seq., 42 U.S.C.A., § 4871 et seq.[1] *88 This was a provisional appointment under the EEA program and, although Cipriano was a state employee, he was being paid with federal funds.
The objective of EEA was to provide "unemployed and underemployed persons with transitional employment in jobs providing needed public services during times of high unemployment and * * * related training and manpower services to enable such persons to move into employment or training not supported under [the EEA]." 42 U.S.C.A., § 4871; 29 U.S.C.A., § 841. After he was rehired in 1972 Cipriano was advised by the Assistant Director of Employment Services in the Department, through one of her staff personnel, to apply for any permanent Civil Service position whose qualifications he could meet. Accordingly, he applied for, took and passed a Civil Service examination for the position of Operator, Refrigeration Services. However, for reasons which are not clear from the record, Cipriano never applied to convert his temporary job as Safety Inspector to a permanent appointment.
Through efforts of the Department of Labor and Industry and the Administrator of EEA, and with Cipriano's consent, he was transferred, on paper only, to Stockton State College for six months beginning March 1973. Stockton State College was chosen because it had a vacancy in the title of Operator, Refrigeration Services, the position for which Cipriano had qualified. However, Cipriano continued to perform his job as Safety Inspector for the Department of Labor and Industry and never actually worked at the Stockton job.
After the six-month working test period ended on September 17, 1973, Cipriano was, for record purposes, transferred back to the Department of Labor and Industry and assumed permanent status in the title of Operator, Refrigeration Services. Soon after, the Department requested *89 Civil Service to change Cipriano's permanent title from Operator, Refrigeration Services to Safety Inspector. Civil Service granted him provisional status in the Safety Inspector job, and he subsequently took and passed a qualifying examination for that position. However, before Cipriano could complete the working test period for Safety Inspector, he was laid off for economic reasons in April 1975.
Shortly thereafter, Civil Service raised questions about the legitimacy of Cipriano's permanent status as Operator, Refrigeration Services, essentially because he never actually completed the working test period in that position. After a hearing a Civil Service hearing officer concluded that the working test period was an essential part of the Civil Service qualifications for the Refrigeration Services job and that Cipriano failed to fulfill that requirement. The hearing officer recommended voiding Cipriano's permanent status in the Refrigeration Services job, and Civil Service adopted that recommendation.
N.J.S.A. 11:12-1 requires that an employment candidate, in addition to passing a competitive examination as required by N.J.S.A. 11:9-1 et seq., must satisfactorily complete a working test period before acquiring permanent status. The statute provides in part:
Appointments and promotions to positions in the competitive * * * service shall be for a probationary period of four months, which may be extended to six months * * *. [N.J.S.A. 11:12-1]
This section specifically provides that the purpose of the working test period is to enable the Civil Service Commission to evaluate the ability of the probationer employee "to satisfactorily perform the duties of the position sought."
In addition to the statutory requirements, the State Administrative Code provides that no person shall work out of title, N.J.A.C. 4:1-6.4, and details the requirements concerning the working test period, N.J.A.C. 4: 1-13.1 et seq. N.J.A.C. 4:1-13.1 specifically provides:
*90 All regular appointments to positions in the competitive, non-competitive and labor divisions of the classified service shall be subject to a working test period except appointments from regular or special reemployment lists or appointments to a comparable or lower class title in lieu of layoff.
N.J.A.C. 4:1-13.2 provides:
The purpose of the working test period is to enable the appointing authority to evaluate the employee's work performance and conduct in order to determine whether the employee merits permanent status.
Thus it is clear that the actual completion of a working test period is ordinarily a basic condition of permanent employment. Dodd v. Van Riper, 135 N.J.L. 167, 171 (E. & A. 1947); Briggs v. Civil Service Dept., 64 N.J. Super. 351, 355-356 (App. Div. 1960); Devine v. Plainfield, 31 N.J. Super. 300, 303 (App. Div. 1954).
From the evidence adduced at the Civil Service hearing there is no question that Cipriano was working outside his title of Operator, Refrigeration Services, in violation of N.J.A.C. 4:1-6.4. Indeed, Cipriano does not appear to have performed those duties at any time during his employment with the State. On its face, therefore, his appeal appears to be without merit.
Cipriano contends, however, that Civil Service's failure to intervene during the six-month work probation period estopped any subsequent challenge to the validity of his appointment. He argues that he was only following the directions of the Department of Labor and Industry and that Civil Service was fully aware of his actions, including his failure properly to perform the work probation period in the title of Operator, Refrigeration Services. He claims that if he had known that his permanent status as a Civil Service employee was in jeopardy he would have sought alternative employment. On both these grounds Cipriano concludes that Civil Service was precluded from invoking the violation of the working test period requirement under estoppel principles.
*91 We disagree. Courts are generally reluctant to apply estoppel theories against governmental agencies. Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493, 503 (1955); Boyd v. Institution and Agencies Dept., 126 N.J. Super. 273, 275 (App. Div.), certif. den. 65 N.J. 281 (1974). Accord, Vogt v. Belmar, 14 N.J. 195, 205 (1954); Zimmerman v. Board of Review, 132 N.J. Super. 316, 324 (App. Div. 1975).
As the court said in Keenan v. Essex Cty. Freeholders Bd., 106 N.J. Super. 312, 316 (App. Div. 1969), "[a] governmental body cannot ordinarily be estopped by prior acts that were in violation of law." Where the act in question is utterly beyond the jurisdiction of a public entity and is ultra vires, the doctrine of estoppel in the interest of equity and essential justice has no direct application. Summer Cottagers' Ass'n of Cape May v. City of Cape May, supra, 19 N.J. at 504; East Orange v. East Orange Bd. of Water Comm'rs, 73 N.J. Super. 440, 464 (Law Div. 1962), aff'd 40 N.J. 334 (1963).
In the present case the Civil Service Commission cannot be estopped by the Department of Labor and Industry's sham paper transfer to make it appear that Cipriano had actually complied with the working test period. Nor can the failure of the Civil Service staff to protest this procedure at the time it originally occurred operate to prevent that Department from carrying out its statutory function. Neither the appointing authority nor the Civil Service Commission had any authority to ratify the improper performance of the working test period. DeLarmi v. Fort Lee, 132 N.J. Super. 501 (App. Div. 1975), certif. den. 68 N.J. 135 (1975). There the court said:
Appointments of police officers are a governmental function in the performance of which a municipality may not be bound or estopped by unauthorized acts of its officers. * * * Certainly the doctrine may not be applied to the actions of an appointing authority insofar as its powers to make appointments in the classified service are concerned. Representations of an appointing authority operating under *92 Civil Service that it will appoint or promote someone to a Civil Service position without complying with Civil Service law are illegal and not binding upon the Department of Civil Service. [at 509-10; citations omitted].
Nor is there any substance to the suggestion that section 7 of the Federal Emergency Employment Act, 42 U.S.C.A. § 4876(c) (18), somehow excused compliance with the Civil Service procedures prerequisite to attainment of permanent status. Such requirements were statutory and therefore mandatory. DeLarmi v. Fort Lee, supra, 132 N.J. Super. at 508-509.
Affirmed.
NOTES
[1] The provisions of the EEA were recodified in 1973, along with several similar programs, under the Comprehensive Employment and Training Act of 1973, Title II, §§ 201-211, 29 U.S.C.A., § 841 et seq.