## CIRCUIT COURT OF THE CITY OF RICHMOND

R. G. Armstrong et al.

v.

City of Richmond et al.

June 14, 1978

Case No. G-1382-3

By JUDGE WILLARD I. WALKER

This case is before the court on petitioner's declaratory judgment petition seeking a mandatory injunction against the defendants which would require defendants to reinstate a ten percent pay differential disallowed to the plaintiffs on July 30, 1977, and to pay such pay differential to the present time and into the future.

The facts of this case are as follows.

The plaintiffs are members of the K-9 Corp (police officers who handle dogs) in the City of Richmond Police Bureau. At all time pertinent to this case, the City of Richmond pay plan provided that K-9 Corps personnel would receive a five percent base pay differential for the handling of dogs, and a ten percent base pay for differential for working all night shifts on a continuous basis. At the point in time when some of the plaintiffs were employed with the City of Richmond as K-9 Corps officers, the officers were working an all-night shift and, therefore, were receiving properly the ten percent pay differential. Although these officers took the position with the K-9 Corps because of the ten percent pay differential involved, they were not misled by any official of the City of Richmond as to the requirements of the City's pay plan or the continuation of those benefits if the work shift arrangement then in existence was changed. The

remainder of the plaintiffs began their employment with the City as K-9 officers with the five percent dog handling differential and the expectation they would receive the ten percent differential when their training was completed. As with the other group of plaintiffs, there was no misrepresentation by the City as to the provisions of the City's pay plan, nor as to the right of the City to change the work shift rotations. On June 30, 1977, the City ceased making ten percent pay differential payments to the plaintiffs (or refused to make such payments) because the pay plan of the City of Richmond made such payments illegal. The all-night shift work schedule had been altered to a rotating shift and the City's pay plan made no provision for a ten percent differential for a rotating shift.

In short, the K-9 officers who received the ten percent night pay differential for some thirty months prior to its termination were unjustly enriched because they were receiving funds which were not authorized by City Council under its ordinance setting up the pay plan for City employees.

The plaintiffs assert that they are entitled to receive the ten percent night pay differential on grounds of implied contract, estoppel and ratification. In effect, the plaintiffs are saying that since the City erroneously and illegally paid them the ten percent differential for thirty months, at which time they were not entitled to it under the pay plan, the City, therefore, entered into an implied agreement with the plaintiffs to continue that payment into the future, whether the shifts were rotational or fixed night shifts, and notwithstanding the clear provisions of the City's pay plan. Similarly, they take the position that from an equitable standpoint the defendant City of Richmond and its officers are estopped from denying their obligations to make such payments and that the City, by making the payments for such a long period time, a portion of which was within the knowledge of the Chief of Police, ratified this supposed implied contract.

I cannot find any evidence in this case that under applicable law would entitle the plaintiffs to receive compensation from the City not in accord with the pay plan of the City adopted pursuant to its charter and under the authorization of the General Assembly. I do not find any evidence in this case of any deliberate

misrepresentation to these officers that their ten percent pay would remain regardless of changes in work shifts or that they would receive additional money by way of a ten percent night differential in lieu of increases necessary to cover increasing costs of dog handling. But, even if there were any such representations, I would have to find that the representations would be unenforceable against the municipal corporation. Any act on the part of the municipal corporation and its agents and employees which undertook to change the clear provisions of the City pay plan would be an *ultra vires* act as to the municipal corporation and would be illegal, null and void.

The position of the City in this case is amply supported by the following authorities: 13 M.J., *Municipal Corporations*, §§ 93, 94, 95, 97 and 98; 15 Am. Jur. 2d., *Civil Service*, §§ 29 and 258, 259 and 262; *Cipriano* v. *Department of Civil Service of New Jersey*, 151 N.J. Super. 86, 376 A.2d 571 (1977), and *DeLarmi* v. *Borough of Fort Lee*, 132 N.J. 501, 334 A.2d 349 (1975).