599 A.2d 507

CITIZENS FOR EQUITY AND THOSE INDIVIDUALS LISTED (SEE APPENDIX), PLAINTIFFS–APPELLANTS, v. NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, DEFENDANT–RESPONDENT.

IN THE MATTER OF THE ADOPTION OF N.J.A.C. 7:1I (SANITARY LANDFILL FACILITY CONTINGENCY FUND REGULATIONS).

Argued September 23, 1991—Decided November 19, 1991.

392

*Cynthia L. Samuels,* Assistant Deputy Public Advocate, argued the cause for appellant Public Advocate of New Jersey (*Wilfredo Caraballo,* Public Advocate, attorney).

*Donna L. Cettei* argued the cause for appellants Citizens for Equity, et al. (*Klein, Cettei, Halden & Goldberg,* attorneys).

*Mary C. Jacobson,* Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney).

PER CURIAM.

We affirm the judgment of the Appellate Division substantially for the reasons set forth in the majority opinion below. 252 *N.J.Super.* 62, 599 *A.*2d 516 (1990). We add these observations to address two of appellants' contentions: (1) that the revised regulations adopted by the New Jersey Department of Environmental Protection (DEP) are unauthorized, arbitrary, and unfair, and (2) that the regulations cannot be applied to claims filed prior to their adoption because DEP failed to

disclose that it had stopped processing claims while it considered revising the regulations.

It is undisputed that approximately 180 claimants, whose property was in the vicinity of the Gloucester Environmental Management Services (GEMS) landfill, have already received compensation for diminution in real property value pursuant to DEP's original regulations. Appellants observe that the new regulations, which require claimants to attempt to sell their homes as a prerequisite to compensation, are significantly more restrictive than the regulations originally promulgated, and are unfair to those property owners whose claims will be processed under the revised regulations. Appellants correctly assert that inevitable unfairness arises when a governmental agency applies standards to certain claimants that are more restrictive than standards it had previously applied to similarly-situated claimants. Acknowledging that unfairness, the reviewing court must determine whether the agency action is nevertheless authorized, reasonable, and supported by sufficient evidence. *A.A. Mastrangelo, Inc. v. Department of Envtl. Protection,* 90 *N.J.* 666, 687, 449 *A.*2d 516 (1982); *New Jersey Guild of Hearing Aid Dispensers v. Long,* 75 *N.J.* 544, 562–64, 384 *A.*2d 795 (1978).

The enabling legislation, the Sanitary Landfill Facility Closure and Contingency Fund Act, *N.J.S.A.* 13:1E–100 to –116 (the Act), strongly supports the Appellate Division's conclusion that the revised regulations are authorized. Moreover, our reading of the Act suggests that DEP's initial regulations regarding reimbursement for loss of property value may have been too permissive. Thus, the issues raised by this case implicate the power of a governmental agency to change regulations that are unsound.

The Act's purpose is to provide compensation for damages from the operation and closure of landfills. The Act taxes owners and operators of sanitary landfills and directs the revenue into a contingency fund administered by DEP.

*N.J.S.A.* 13:1E–104 to –105. The contingency fund is strictly liable "for all direct and indirect damages, no matter by whom sustained, proximately resulting from the operations or closure of any sanitary landfill." *N.J.S.A.* 13:1E–106.

Compensable damages under the Act include but are not limited to

(1) The cost of restoring, repairing or replacing any real or personal property damaged or destroyed;

(2) The cost of restoration and replacement, where possible, of any natural resource damaged or destroyed, including any potable water supply;

(3) The cost of any personal injuries, including medical expenses incurred and income lost as a result thereof; and

(4) The costs of the design, construction, installation, operation and maintenance of any device or action deemed necessary by the department to clean up, remedy, mitigate, monitor or analyze any threat to the public health, safety or welfare of the citizens of the State, including the installation and maintenance of methane gas monitors and vents and leachate monitoring wells and collection systems, and the sampling and analysis of any public or private potable water supply. [*N.J.S.A.* 13:1E–106.]

Thus, the Legislature specifically designated as compensable the costs incurred from specific damage to property or natural resources, personal injuries, or the need to monitor or remediate damages created by the landfill. Although diminution of real-property value is qualitatively different from the kinds of damages enumerated by the Legislature, DEP's initial regulations specifically authorized compensation therefor by defining damages to include

(1) The cost of restoring, repairing or replacing any real or personal property damaged or destroyed, and *the diminution in fair market value of any real property.* [*N.J.A.C.* 7:1T–1.5 (emphasis added).]

Those regulations also required that claimants "produce substantial evidence" of damage. *N.J.A.C.* 7:1I–1.7(a).

As evidenced by the certification of the administrator of the Sanitary Landfill Contingency Fund (Fund), approximately eighty percent of all claims filed against the Fund through September 30, 1988, were filed by persons owning property in the vicinity of the GEMS landfill. DEP asserts that of the approximately $5.1 million in claims paid by the Fund as of that date, it awarded about $4.8 million to claimants alleging diminu-

tion of property value based on proximity of their homes to the GEMS landfill. That experience, combined with the Fund's potential statewide liability for damages attributable to diminution of property value because of proximity to GEMS and other landfills, prompted DEP to consider revising its regulations. The administrator observed:

> Since the potential liability of the Fund is so enormous, we wanted to make sure that the Fund was administered equitably to ensure the continued availability of monies for people who could satisfy the requirements for compensation. In attempting to address these adverse effects, it was decided that the regulations should be revised. One of the changes was to require that a claimant make a good faith attempt to sell his property. It did not appear that to require sales would depress the local real estate market and escalate damages paid by the Fund. Moreover, we felt the sales requirement, which became *N.J.A.C.* 7:1I-3.3, would be a reasonable way to provide us with additional evidence of actual damage caused by landfill operations and provide the information needed to continuously monitor the claims process.

■ The requirement that a property owner attempt to sell his or her home as a condition of compensation represents an attempt to verify that diminution of value attributable to the landfill has occurred. We have no doubt that DEP's delegated authority under the Act authorizes such a requirement, particularly in view of the Legislature's apparent intention to sanction compensation for specific and discernible damages. We also concur in the Appellate Division's conclusion that the sale requirement in the revised regulations is neither arbitrary nor unreasonable, considering DEP's experience with its original regulations. Government has a duty to correct itself, and courts should not stand in the way when a governmental agency, acting in the public interest, attempts to improve its procedures.

■ We also agree with the Appellate Division's determination, 262 *N.J.Super.* at 77–79, 599 *A.*2d at 525–526 that the DEP's informal suspension of claims processing pending adoption of new regulations was an intra-agency statement, see *N.J.S.A.* 52:14B–2(e), and accordingly exempt from the "notice and hearing" requirements, see *N.J.S.A.* 52:14B–4, of the Administrative Procedure Act, *N.J.S.A.* 52:14B–1 to –15. In analo-

gous circumstances, several federal courts have concluded that an agency's decision to suspend the processing of applications pending adoption of revised regulations does not require compliance with the "notice and hearing" requirements of the federal Administrative Procedure Act, 5 *U.S.C.A.* §§ 551–59 (1991). See *Kessler v. F.C.C.*, 326 *F.*2d 673, 682 (D.C.Cir.1963); *Waste Management Inc. v. United States Envtl. Protection Agency*, 669 *F.Supp.* 536, 539–40 (D.D.C.1987).

Although we agree with the Appellate Division that the law did not require public notice or hearing before DEP could suspend the processing of claims for compensation under the Act, neither did the law prohibit the agency from disclosing to claimants what it was doing. The due-process standards incorporated in the New Jersey Administrative Procedure Act provide a minimum standard for agency conduct, but do not preclude an agency from acting fairly and candidly in respect of those whose interests may be affected by agency action. In other contexts we have noted that "government has an overriding obligation to deal forthrightly and fairly with property owners," *F.M.C. Stores Co. v. Borough of Morris Plains*, 100 *N.J.* 418, 426, 495 *A.*2d 1313 (1985), and have insisted that "government must 'turn square corners' rather than exploit litigational or bargaining advantages * * *." *W.V. Pangborne & Co. v. New Jersey Dep't of Transp.*, 116 *N.J.* 543, 561, 562 *A.*2d 222 (1989) (quoting *F.M.C. Stores Co., supra*, 100 *N.J.* at 426, 495 *A.*2d 1313).

Federal courts have recognized "that many merely internal agency practices affect parties outside the agency—often in significant ways." *Batterton v. Marshall*, 648 *F.*2d 694, 707 (D.C.Cir.1980). Moreover, the federal Administrative Procedure Act mandates that an agency publish in the *Federal Register* "statements of the general course and method by which its functions are channeled and determined, including the nature and requirements of all formal and informal procedures

available." 5 *U.S.C.* § 552(a)(1)(B). Thus, a federal agency that adopts a "freeze order" suspending the processing of applications or permits ordinarily is required to notify the public. *See Kessler, supra,* 326 *F.*2d at 682. The policy objective of enhancing public awareness advanced by the federal law is compelling.

■ We are persuaded that in these circumstances DEP, irrespective of its statutory exemption, should have notified all claimants that the processing of claims was being temporarily suspended while the agency considered the adoption of the new regulations. Affording claimants such notice is a matter of fairness. Instead, the record suggests that some DEP personnel did not respond forthrightly to inquiries about pending claims until DEP was prepared to publish the revised regulations. The statutory exemption from the requirement of public notice and hearing does not relieve DEP of its duty of candor to the public.

■ Claimants insist that DEP's failure to be forthright about its decision to stop processing claims while it considered revising the original regulations should estop DEP from applying the new regulations to the pending claims. Our view of the record is that the absence of notice caused no substantial prejudice to claimants other than to delay their awareness that their claims would be governed by new rules. Moreover, in adopting revised regulations, DEP intended to apply them to claims previously filed but not processed. The absence of substantial prejudice to claimants and the likelihood that an estoppel against DEP would interfere with an otherwise valid and significant governmental objective impel our adherence to the general rule that "[e]quitable estoppel is rarely invoked against a governmental entity * * *." *O'Malley v. Department of Energy,* 109 *N.J.* 309, 316, 537 *A.*2d 647 (1987); *Cipriano v. Department of Civil Serv.,* 151 *N.J.Super.* 86, 91, 376 *A.*2d 571 (App.Div.1977). We are fully in agreement with the Appellate Division's conclusion, 252 *N.J.Super.* at 79, 80,

599 *A.*2d at 526, 527, that DEP should not be estopped from applying the revised regulations to pending claims.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For reversal*—None.

## APPENDIX

STEVEN L. AND ANNE ACKERMAN

JOHN AND MARIA ALEXANDER

PAUL M. ALEXANDER

ROBERT F. AND DIANNE K. ANDREOTTA

DENNIS E. AND PATRICIA A. APICE

MARY ANN ASTORE

FRANK A. AVERSA

ERNEST H. AND DOROTHY H. BAALS

DOUGLAS J. AND LAURIE J. BAILEY

ARTHUR A. AND KIMBERLY M. BARILOTTI

JOSEPH W. JR. AND JANE M. BARTH

ERNEST J. AND RAYLENE BASILE

DONATO AND HARRY BASS

JOSEPH AND KATHLEEN BAYBA

RONALD D. BERGMAN

JOSEPH AND MARIA BISIRRI

DAVID L. AND PATRICIA A. BLANCHARD

CHARLES JR. AND RUTH ANN BOEHMER

MARGARET BOEHMER

DENISE BONGIORNO

GEORGE T. BOVA

W.R. AND MARIANNE R. BRITTON
JOHN E. SR. AND GAIL L. BROOME
FRANK R. AND ELAINE H. BUCKMAN
BRIAN AND CATHY BURNS
HUBERT E. CAMP, DDS, PA
LESLIE AND LEE ANNE CAPELLA
PAUL AND LINDA CARDAMONE
CHARLES J. CARR AND MARIE A. ROWSON
GEORGE AND ANNA CARR
FRANK AND MARYBETH CHASLONG
THEODORE M. AND FRANCES CIANFRANI
GERALD AND PATRICIA CLARK
WARREN A. JR. AND QUEN S. COLEMAN
DAVID G. AND LYNN G. CONNOLLY
JAMES AND CAROLE CONNOR
SHARON A. AND MICHAEL W. CONTE
ADELAIDE F. COOK (FILED UNDER RUTH CAMPANA, DECEASED)
ROBERT H. AND HELEN COOK
RICHARD A. AND PATRICIA A. CORATOLO
PATRICIA AND PAUL COSSABOON
JOHN J. AND JEANETTE M. COTTONE
WILLIAM L. AND CHRISTINE CRAWFORD
THOMAS AND JOANNE CRESONG
DONNA CROCE
ROBERT C. AND DEBORAH A. CURREY
JOHN F. AND KAREN J. CUSACK
RICHARD W. AND CAROLE E. DAHL
ELIZABETH F. DAVENPORT

DEBRA A. DAVIS
WILLIAM AND ANNA DAVIS
JOSEPH B. AND SANDRA F. DEA
EDWARD M. AND MARGARET M. DELLORCO
SAMUEL A. JR. AND EDITH C. DeMAIO
ROBERT J. AND ROCCHINA E. DESMARTES
DIANE AND JOHN G. DiFILLIPO
ANTHONY AND MARGENE DiLALLO
JOANNE AND "TONY" DiMAURO
RICHARD AND THELMA DONLEY
PHILLIP R. AND LINDA S. DORN
LAURENCE J. AND ANDREA L. DOUGHERTY
ROBERT E. AND HELEN DOUGHERTY
LORRAINE L. AND THOMAS DOWNEY
JAMES AND CATHERINE DURNING
HAROLD AND MARGARET FARLOW
ALVIN AND JACQUELIN FERRIGNO
GEORGE J. AND KAREN K. FLINN
RICHARD M. AND JUDY FOGEL
JOSEPH AND LORETTA FORTUNA
EDWARD AND PATRICIA FOSTER
JOHN AND CAROLYN FREDERICKS
JOHN J. AND REGINA M. FRIEL
RICHARD AND MAUREEN FRISCH
CLEMENT A. FUSCELLARO, SR.
STANLEY G. AND MICHALINE L. GALIK
CHARLES T. AND BEVERLY A. GALLOWAY
JOSEPH AND IRENE GARRAMONE
JOHN AND KATHLEEN GARRISON

JOSEPH AND PATRICIA GENTILE
JOSEPH J. AND PAT A. GEORGE
CHARLES W. AND DELORES J. GIBBONS
LOUIS E. AND DELORES GILBERT
ROBERT J. AND CAROL ANN GILLETTI
DAVID AND MARY GIORDANO
GREGORY AND SUSANNE GLEASON
RICHARD A. AND DENISE P. GRENDA
JAMES AND MAUREEN HAMER
CHARLES J. AND DIANA M. HAMMOND
THOMAS J. AND LORELIEI HANS
EUGENE M. AND CYNTHIA A. HARDY (FILED UNDER
CYNTHIA SPAULDING)
LAURA HARWANKO
GREGORY AND BARBARA HAWRYLIW
ROBERT AND GLORIA HENDERSON
SANDRA HENGSTEBECK
MICHAEL A. AND MARG. M.R. HENWOOD
CHARLES AND GEORGIA HERR
THOMAS AND ALICE HINDERLITER
ORVILLE R. AND RUTH C. HOFFMAN
MARIA B. HOUCK
RONALD AND ROSEMARIE IACOVELLI
CHARLES J. AND B. HENKEL IGNAS
ARTHUR AND LINDA INTERLANTE
FRANK AND DEBORAH IZZI
RONALD AND CATHERINE JACOVINI
RONALD J. AND MADELYN A. JANKOWSKI
ANDREW J. JR. AND KATHLEEN A. JERECKI

SHERRON E. AND ROSEMARY C. JOHNSON
ROY E. JONES AND GENEVIEVE JONES
LINDA G. KANE
THOMAS T. AND KAREN M. KEATING
MARY KESSLER
JAMES H. AND LYNN KING
WALTER KING
JANET KITSIOS
EDWARD C. AND BERNICE R. KRAMER
GARY KULICK
PHYLLIS LaFRANCE
LYNN LARSON
TRUEPHENIA LAWRENCE
MARK AND KAREN LEAHEY AND ERNEST REED
WILLIAM AND JOANNE LEMAN
MICHAEL AND ARLEEN LIBERI
RICK AND KAREN L. LIBERTI
JAMES E. AND PATRICIA E. LOGAN
THOMAS W. AND KAREN A. LONGACRE
SAMUEL A. AND MARY ANN LUCCI
ARLENE AND AMIN MAHRAN
CHARLES B. AND ROSE E. MAILAHN
TOM AND RANDI MANACO
ROBERT AND DONNA MARRAMA
KAREN AND ROBERT MAULL
ROBERT AND DELORES McBRIDE
WILLIAM H. AND SHIRLEY McCALLEY
GEORGE H. AND EMMA McCAUGHIN
DOMINIC AND YOLANDA McDOWELL

JOSEPHINE AND WALTER McFARLAND
DANIEL AND LINDA McGOVERN
PATRICK AND DOROTHY McGUIRE
STEPHEN AND DAWN McKILLOP
KATHLEEN M. AND JOSEPH M. MEGARA, JR.
KENNETH AND TERRY MEGARA
CARLYLE AND BARBARA JO MELLEBY
DORIS L. AND JOSEPH B. MENCHACA
W.A. MENEWISCH OR C.A. PORRECA
THOMAS III AND HOLLY MICHEL
MICHAEL J. AND MARILYN M. MIDUSKI
JAMES MILANO
ROBERT AND ROSEMARY MILLER
LARRY E. AND JOSEPHINE G. MILLNER
GEORGE R. AND DONNA MILLS
PAUL AND JANE MITCHELL
KATHLEEN AND PLACIDO MOFFA
ANTHONY C. AND CATHERINE MOORE
DONALD L. AND CORAZON M. MOORE
ARTHUR J. AND ROSELIE F. MORIN
FRED J. AND KATHLEEN J. MULLER
MICHAEL AND DIANNE T. MUNDIE
GREGORY AND JO-ANNE MURPHY
JOHN H. AND CHRISTINE MURRAY
MARTIN AND JAMIE I. MURRAY
ROBERT A. AND LINDA M. NAGE
WILLIAM AND RITA NATOLI
JAMES AND CYNTHIA NILAN
CLEMENT J. AND NANCY C. ORACZEWSKI

THEODORE AND LUCY ORBACZEWSKI
VINCENT ORR
DENNIS O'SHAUGHNESSY
CRAIG AND MARLENE PALMA
NICHOLAS AND LINDA PALMA
JOSE T. AND DEBRA PANTOJA
BABU C. AND MADHY B. PATEL
CHARLES R. AND MARY E. PAYLOR
JOHN W. AND PATRICIA A. PEEPLES
THOMAS AND MAUREEN PEYTON
ALFRED AND NANCY A. PIERSON
CAROL AND WILLIAM PINDER
S.D.B. PODUFALY AND C.P. BARRACLIFF, SR.
DAVID AND CHERYL POMIANEK
NICK F. AND SUSAN M. POMPONIO
FREDERICK J. AND BARBARA POPIOLEK
RICHARD E. AND SUSAN PRINZ
RAYMOND G. AND BEVERLY A. PROTICH
DAVID B. AND SARA A. PYNE
JOSEPH J. AND MARYANN QUINN
DANIEL A. RADCLIFFE
JOHN A. AND LINDA B. RAYMOND
DOROTHY READ
STEVEN AND JO–ANN M. RECH
HARRY R. AND ELIZABETH M. REDMAN
GARY L. AND DEBBIE REED
ELIZABETH AND HARRY RESCIGNO
LYNN RICEVUTO
DEBORAH ROBINSON, n/k/a PYSZ

LARRY AND ARLENE ROSSI
STEVEN P. ROTELLA
SALVATORE D. AND ROSE ANNA RUSSO
ROBERT AND MADELINE SALERNO
FRANK W. JR. AND MARIE C. SARNE
ROBERT W. AND LAURA F. SAWYER
CAROL A. SCHMITZ
ELEANORE AND WILLIAM SCHOLES
EUGENE J. AND JACQUELYN SCHOOLS
SHEILA B. SEGAL
SUSAN SHANKO
RICHARD H. AND DONNA L. SHANNON
TIMOTHY G. AND BARBARA D. SHARPLEY
JOSEPH J. AND MARIE C. SHERIDAN
MARK E. SHERMAN
HARRY S. AND JOANNA N. SHUTE
JOSEPH G. AND HELEN SHWALUK
MICHAEL AND SHARON SILVER
JOHN A. AND MARTHA C. SIMON
WILLIAM III AND MARLENE SIMON
JANELLE AND HARRY SMITH
STANLEY AND DOROTHY STEPHENS
KATHLEEN STERN
HARRY C. AND JOAN E. STRICKLER
ROY M. AND DEBORAH L. STROUSE
MELANIE J. SULLIVAN
JOHN C. AND JOANN P. SYLVESTER
THOMAS AND LORRAINE TAFT
SCOTT AND JOAN TANENBAUM

WILLIAM AND CHARLENE TAYLOR
ROBERT J. AND CAROLEE TEE
EDWARD J. AND GEORGINE M. THOMPSON
WILLIAM AND ETHEL TOLMAN
IRENE TOPALIDIS
ELAINE AND JOSEPH TRACY
EDMUND AND ELEANOR TRYKOWSKI
JAMES E. AND ARLENE G. TWILLEY
MARGARET ULERICK
ANNA URGO
LOUIS VIZOCO
ROBERT AND MILDRED WAGNER
WATSON AND PHYLLIS J. WALDELL
HARRY AND KAREN WALLACE
CAROL J. WASHINGTON
RUSSELL V. AND PATRICIA A. WATKINS
MARTIN E. WAY
ROBERT AND CHRISTINE WILD
WILLIAM H. AND BEVERLY J. WILLIAMS
JEFFREY AND LINDA WILSON
MARTIN T. AND PATRICIA A. WILT
JOSEPHINE A. WOODS
MARK A. AND DENISE WRAY
JOHN AND MARGARET YEACKEL
CAROL A. ZUCCARELLI
JOHN AND JANE DOE