**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0232-24

IN THE MATTER OF PROTEST
FILED BY EL SOL CONTRACTING
AND CONSTRUCTION CORP.,
CONTRACT T100.638.

_____

Argued November 13, 2024 – Decided November 27, 2024

Before Judges Gooden Brown, Smith, and Vanek.

On appeal from the New Jersey Turnpike Authority.

Michael F. McKenna argued the cause for appellant
El Sol Contracting and Construction Corp. (Cohen
Seglias Pallas Greenhall & Furman, PC, attorneys;
Michael F. McKenna and Timothy R. Ryan, on the
briefs).

Thomas A. Abbate argued the cause for respondent
New Jersey Turnpike Authority (Decotiis, Fitzpatrick,
Cole & Giblin, LLP, attorneys; Judy A. Verrone,
Thomas A. Abbate, and Jason S. Nunnermacker, on the
brief).

PER CURIAM

This appeal concerns the rejection of a bid submitted by El Sol

Contracting and Construction Corp. (El Sol) to the New Jersey Turnpike

Authority (NJTA) for a contract to perform construction and repair work on several bridges. Although El Sol was the lowest bidder, NJTA rejected its bid because the consent of surety (COS) was not submitted with a power of attorney (POA) setting forth the signatory's authority to sign that document. After our thorough review of the record and prevailing law, we reverse and remand for NJTA to award the contract to El Sol, as the lowest responsible bidder.

I.

We discern the salient facts from the record. On May 20, 2024, NJTA solicited bids for Contract T100.638 (the Contract), to perform a project entitled the Deck Rehabilitation of Newark Bay-Hudson County Extension (NB-HCE) Bridge Zones 2 and 3 (Redecking Project).

The project and bid requirements were described in written bid specifications (the Bid Specifications). The Redecking Project involves the reconstruction and repair of eleven bridges in two of the NB-HCE's three "zones," including repairs to the bridges' decks, structural steel repairs, parapet and median barrier replacements, and drainage and lighting improvements. The Redecking Project is meant to ensure motorists' safety until the bridges can be entirely replaced as part of a greater project to be completed in the next ten to fifteen years.

A-0232-24

Section 102.07 of the Bid Specifications for the Redecking Project required that bids be "accompanied by a Proposal Guaranty" in the form of either a "Proposal Bond or Letter of Surety using the forms provided in [NJTA's] Electronic Bidding software." If a bidder chose to submit a Proposal Bond, it needed to be "in the sum of not less than ten percent (10%) of the total price of the Proposal."

Section 102.08 of the Bid Specifications further stated:

> The Proposal Bond . . . shall be accompanied by a Power of Attorney and a Consent of Surety, each in a form acceptable to the Authority, which shall be executed by the surety company. The Power of Attorney shall set forth the authority of the attorney-in-fact who has signed the Proposal Bond . . . on behalf of the surety company and shall further certify that such power is in full force and effect as of the date of the Proposal Bond . . . . The Consent of Surety shall set forth the surety company's obligation to provide the Contract Bond upon award of the Contract to the Bidder.

Section 103.02 of the Bid Specifications stated that the lowest responsible bidder awarded the Contract would be required, within ten days of receipt of the Contract, to "[f]urnish and deliver three copies of the Contract Bond," which was to be in an amount "not less than the total amount bid." The successful low bidder would also be required to "[f]urnish proof satisfactory to [NJTA], of the

A-0232-24

authority of the person or persons executing the Contract and Contract Bond on behalf of the Contractor."

Section 103.03 of the Bid Specifications stated that if the successful low bidder failed to comply with Section 103.02 and execute the Contract in a timely fashion, the Contract could be voided and the bidder forced to pay damages. In such an event, the bidder's surety company would be required to "pay [NJTA] the amount provided for in the Proposal [Bond]."

NJTA received five bids by the June 25, 2024 deadline. El Sol submitted the lowest bid, at $70,865,354. Joseph M. Sanzari, Inc. (Sanzari) submitted the second lowest, at $80,735,000.

El Sol's bid included a Proposal Bond bearing the name of Liberty Mutual Insurance Company (Liberty) as the surety company. El Sol's Proposal Bond was accompanied by a POA and a COS. The POA stated Liberty "name[d], constitute[d] and appoint[ed] Katherine Acosta . . . its true and lawful attorney-in-fact, with full power and authority hereby conferred to sign, execute and acknowledge" El Sol's Proposal Bond. The POA further stated Liberty may appoint attorneys-in-fact "to act on behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations." Pursuant to the POA, all attorneys-

in-fact so designated by Liberty, "subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and execution of any such instruments . . . ." The POA also stated "this Power of Attorney limits the acts of those named herein and they have no authority to bind the Company except in the manner to the extent herein . . . ." El Sol's Proposal Bond was "entered and executed by" Acosta.

Liberty agreed in the COS that in the event El Sol was awarded and signed the Contract, it would, as surety, "execute or arrange for the execution of the necessary final bonds in an amount not less than 100% of the [El Sol's] Proposal." Acosta signed the COS as Liberty's representative.

El Sol asserts that on June 26, it was advised at a post-bid meeting with NJTA's engineer of record that a recommendation would be made to the NJTA Commissioners to award it the Contract at its July meeting. El Sol was not awarded the Contract.

Instead, on August 12, NJTA issued Document Change Announcement DCA2024SS-05, revising the Authority's 2016 Standard Specifications for future projects. NJTA revised Section 102.08 of the Standard Specifications to "clarif[y] that Powers of Attorney related to Proposal Bonds must explicitly grant

authority to the attorney-in-fact to execute both the Proposal Bond and the Consent of Surety."  The new language in Section 102.08 reads:

> The Proposal Bond . . . and the Consent of Surety shall be accompanied by a Power of Attorney evidencing the signatory's authority to bind the Surety to the Proposal Bond . . . and the Consent of Surety.  The Power of Attorney shall expressly set forth the attorney-in-fact's authority to sign the Proposal Bond  . . . and the Consent of Surety on behalf of the surety company, and shall further certify that such power is in full force and effect as of the date of the Proposal Bond . . . and the Consent of Surety.  The Consent of Surety shall set forth the surety company's unqualified obligation to provide the Contract Bond upon award of the Contract to the Bidder.  The Power of Attorney and Consent of Surety shall be in a form acceptable to the Authority.

On August 19, NJTA advised El Sol that its bid was disqualified due to an "incurable" error, without further explanation.  NJTA's agenda for its August 27 Meeting included action to award the Contract to Sanzari.  El Sol asserted it had never been given "any reasoning or clarification as to why" its bid had been disqualified and requested that NJTA adjourn its award of the Contract to Sanzari.

NJTA subsequently issued a letter to El Sol stating its Board of Commissioners voted to award the Contract to Sanzari, attaching documentation indicating NJTA's Law Department recommended rejecting El Sol's low bid "due to failure to provide a valid Consent of Surety" and specifying "[t]he

6

limited Power of Attorney provided does not grant authority to bind the surety to issue the requisite contract bond."

NJTA's Director of Law, Thomas F. Holl, explained to El Sol's attorney that a "fatal defect" with El Sol's bid documents was discovered during a legal compliance review. Holl asserted that El Sol's POA limited Acosta's authority as attorney-in-fact to "executing the proposal bond" and provided "no authority for [her] to bind the surety to the obligations contained in the [COS]." Holl said there was no evidence the COS was binding on Liberty, "which [was] tantamount to El Sol having submitted no [COS] at all." He characterized El Sol's documents as "nothing more than an empty promise unenforceable against [Liberty]," positing that El Sol's bid was non-responsive to the Bid Specifications.

On August 27, Liberty wrote to NJTA to express its "strenuous[] disagree[ment]" with the rejection of El Sol's bid. Liberty explained that the Proposal Bond and COS were "a single instrument, contained in a single electronic file and labeled with the same identifying bond number specifically listed and authorized by the POA," asserting it was "clear that the bond and consent [were] both authorized by the POA." Liberty also stated it "would be happy to amend the POA" to contain language NJTA proposed. Two days later,

Liberty wrote to El Sol's counsel, offering a list of thirteen recent instances where NJTA awarded a contract to a bidder based on the exact language Liberty used in El Sol's documents.

On August 30, El Sol submitted a formal bid protest to NJTA,[1] arguing its POA and COS complied with Section 102.08 of the Bid Specifications and asserting that NJTA's revision to the specifications after the bid opening was evidence that a POA for the COS was not previously required. El Sol also relied on Liberty's correspondence as confirmation that the surety company believed itself fully bound by the COS to satisfy its obligations. On September 17, Holl, acting as Hearing Officer, upheld NJTA's award of the Contract to Sanzari.

NJTA denied El Sol's request for a stay on September 20. On September 23, El Sol filed its notice of appeal and an emergent application for a stay pending appeal. We granted El Sol's emergent motion and issued a stay pending disposition of the accelerated appeal.[2]

---

[1] El Sol's submission is dated August 28, 2024, but the final agency decision indicates it was not sent to NJTA until August 30, 2024.

[2] On October 10, 2024, the Court denied NJTA's motion to vacate the stay and ordered accelerated disposition of this appeal.

## II.

Our review of agency actions is "limited." Pub. Serv. Elec. & Gas Co. v.
N.J. Dep't of Env't Prot., 101 N.J. 95, 103 (1985). An agency's "final quasi-
judicial decision" should be affirmed unless there is a "'clear showing' that it is
arbitrary, capricious, or unreasonable, or that it lacks fair support in the record."
Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 9-10
(2009) (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). The reviewing
court is restricted to three inquiries:

> (1) whether the agency action violates the enabling act's
> express or implied legislative policies; (2) whether
> there is substantial evidence in the record to support the
> findings upon which the agency based [its] application
> of legislative policies; and (3) whether, in applying the
> legislative policies to the facts, the agency clearly erred
> by reaching a conclusion that could not reasonably have
> been made upon a showing of the relevant factors.
>
> [Pub. Serv. Elec. & Gas Co., 101 N.J. at 103.]

"The burden of demonstrating that an agency's action was arbitrary, capricious,
or unreasonable rests upon [the challenger to that action]." In re Arenas, 385
N.J. Super. 440, 443-44 (App. Div. 2006). "The interest of justice . . . authorizes
a reviewing court to abandon its traditional deference . . . when an agency's
decision is manifestly mistaken." Outland v. Bd. of Trs. of the Tchrs.' Pension
& Annuity Fund, 326 N.J. Super. 395, 400 (App. Div. 1999).

9

## III.

After de novo review of the record and prevailing law, we conclude NJTA acted arbitrarily, capriciously, and unreasonably by rejecting El Sol's bid since the POA, COS, and Proposal Bond that El Sol submitted complied with the Bid Specifications in effect at the time of the bid opening. In re On-Line Games, 279 N.J. Super. at 594. We therefore reverse NJTA's final agency decision and remand the matter to NJTA to award the contract to El Sol as the lowest responsible bidder pursuant to N.J.S.A. 27:23-6.1.

The general purpose of bidding is to "secure for the public the benefits of unfettered competition." Meadowbrook Carting Co. v. Borough of Island Heights, 138 N.J. 307, 313 (1994). Bidding advances the public interest "in securing [the] most economical result by inviting competition in which all bidders are placed on an equal basis . . . ." Ibid. (citing River Vale Twp. v. R. J. Longo Const. Co., 127 N.J. Super. 207, 215 (Law Div. 1974)). In doing so, the bidding process "guard[s] against 'favoritism, improvidence, extravagance and corruption.'" Ibid. (quoting Twp. of Hillside v. Sternin, 25 N.J. 317, 322 (1957)).

NJTA's bidding process is governed by N.J.S.A. 27:23-1 to -60 and the implementing regulations at N.J.A.C. 19:9-2.1 to -2.13. Other public bidding

10

statutes, such as the Local Public Contracts Law,[3] apply to NJTA's contract procurement, where the statutory authority does not conflict.  George Harms Constr. Co. v. N.J. Tpk. Auth., 137 N.J. 8, 36 (1994) (relying on precedent under the Local Public Contracts Law).

Under N.J.S.A. 27:23-6.1, NJTA must publicly advertise for bids for any contract where the anticipated expenditure is over $25,000, and must award the contract to "the lowest responsible bidder."  N.J.A.C. 19:9-2.2(c)(6) similarly states that a contract bid by NJTA "shall be awarded with reasonable promptness by written notice to the lowest responsible and responsive bidder."  This regulation further provides that NJTA "retains the right to reject any or all bids, to waive informalities and minor irregularities, and to rebid the entire contract." Ibid.

N.J.A.C. 19:9-2.2(c)(8) states that NJTA may require "bid or proposal bonds . . . in such form and format as deemed acceptable by the [g]eneral [c]ounsel" in an amount "deemed necessary . . . to guarantee the amount of the bid."  Similarly, N.J.A.C. 19:9-2.2(c)(9) provides that NJTA may require submission of "[p]erformance bonds, contract bonds, or consents of surety," also "in such form and format as deemed acceptable by the [g]eneral [c]ounsel" and

---

[3]  N.J.S.A. 40A:11-1 to -60.

A-0232-24

in an amount deemed necessary "to ensure faithful performance of the contract or for the payment of persons performing work on the project."

However, the requirements for the mandatory bid submissions "shall be set forth or specified in the bid specifications." Ibid. All conditions and specifications "must apply equally to all prospective bidders," to foster and preserve a "common standard of competition." Hillside, 25 N.J. at 322. When evaluating whether a contracting agency's decision regarding a bid's conformity with specifications was proper, "the preliminary inquiry is whether the bid deviates from" those specifications. In re Protest of Award of On-Line Games Prod. & Operation Servs. Cont., 279 N.J. Super. 566, 594 (App. Div. 1995).

We begin our analysis by defining relevant terms. A COS is a certificate from a surety company that assures the public entity that the surety will provide a contract bond if the contract is awarded to and signed by the bidder that has submitted it. Meadowbrook Carting Co., 138 N.J. at 316. It provides a guarantee at the time of bid submission "that the low bidder will have the capacity to perform the contract and to supply the necessary bonds." Ibid.

A POA is "a written instrument by which an individual known as the principal authorizes another individual . . . known as the attorney-in-fact to perform specified acts on behalf of the principal as the principal's agent."

N.J.S.A. 46:2B-8.2(a). A POA's purpose is "not to define the authority conferred on the agent . . . but to serve as evidence to third persons" of the attorney-in-fact's "agency authority." Kisselbach v. County of Camden, 271 N.J. Super. 558, 564 (App. Div. 1994).

Where a COS is required by bid specifications, failure to submit that document containing an unequivocal assurance that the surety company will provide the contract/performance bond upon award renders a bid materially defective. Id. at 321-25. Requiring a COS may deter potential competitors from bidding, so it is considered unfair for a public entity to waive that requirement after bids are opened. Id. at 323. Accordingly, the failure to submit a COS at all, or submission of a COS that does not "bind the surety to supply the required bonds when the contract [is] awarded" will "constitute[] a material, non-waivable defect in the bid." Mayo, Lynch & Assocs. v. Pollack, 351 N.J. Super. 486, 497 (App. Div. 2002).

Section 102.07 of the Bid Specifications required the submission of a Proposal Bond in the amount of at least ten percent of the total proposal price. El Sol's Proposal Bond was accompanied by a POA executed by Liberty, as its surety company. The POA expressly stated that Acosta, the attorney-in-fact, was given authority "to sign, execute and acknowledge the following surety

13

bond," referencing the Proposal Bond. The POA contained generalized language that an appointed attorney-in-fact would have the power to act on behalf of Liberty in signing and executing "any and all undertakings, bonds, recognizances and other surety obligations," subject to any limitations that may be set forth in a POA.

Well-settled principles governing construction of contracts merit a conclusion that El Sol's bid was compliant with NJTA's Bid Specifications, which did not require bidders to submit a POA authorizing the execution of the COS. When interpreting a contractual provision, a court must first consider whether it is clear or ambiguous. Schor v. FMS Fin. Corp., 357 N.J. Super. 185, 191 (App. Div. 2002). When the terms are clear, they must be enforced as written. Karl's Sales & Serv. v. Gimbel Bros., 249 N.J. Super. 487, 493 (App. Div. 1991). A court may not "rewrite the contract merely because one might conclude that it might well have been functionally desirable to draft it differently." Brick Twp. Mun. Utils. Auth. v. Diversified R.B. & T. Constr. Co., 171 N.J. Super. 397, 402 (App. Div. 1979).

The express language of Section 102.08 supports a conclusion that the POA was required only for the Proposal Bond and that there was no mandate in the Bid Specifications for a bidder to provide a POA authorizing the COS. The

first sentence of Section 102.08 stated that a bidder's Proposal Bond needed to be accompanied by a POA, and a COS executed by the surety company. The plain language establishes the POA and COS were separate documents accompanying the Proposal Bond.

The requirements of the POA were tethered only to the Proposal Bond, not to the COS. Section 102.08 stated the POA needed to set forth the authority of the attorney-in-fact "who has signed the Proposal Bond" and to certify this authority was "in full force and effect as of the date of the Proposal Bond." The POA requirements in Section 102.08 do not reference the COS in any way, nor does the COS language reference a POA. There is no requirement in the Bid Specifications that a POA authorizing the attorney-in-fact to bind the surety company to the COS be submitted with the bid package. Section 102.08 did not describe what authority the attorney-in-fact must hold with any detail, nor did it set forth what the COS needed to contain beyond a statement of the surety company's obligation to provide a Contract Bond upon award of the Contract to the bidder.

El Sol's bid conformed to the written Bid Specifications in effect at the time of the bid opening since its POA explicitly granted the authority to Acosta to execute, sign and acknowledge the Performance Bond on behalf of Liberty.

A-0232-24

Its bid also contained a COS stating Liberty was obligated to provide the Contract Bond in the event of award to El Sol, which is all that was required under the Bid Specifications for the Project. Thus, NJTA's rejection of El Sol's bid was arbitrary, capricious, and unreasonable, since it was not based upon any actual, material defect or deviation from the Bid Specifications.

We are unconvinced that "common sense and settled practice in the construction industry" compels the conclusion that a POA is necessary to support a COS where the Bid Specifications do not require it. The Bid Specifications inform whether a COS is mandatory and shall contain any and all requirements for the submission of that document. Meadowbrook Carting Co., 138 N.J. at 321-25 (reasoning a valid unequivocally binding COS is a key unwaivable part of a bid where a public entity's specifications require one). NJTA has not proffered any binding precedent supporting its position that the POA was impliedly required to authorize the COS such that its absence constitutes a material, non-waivable defect. Recognizing such an implied requirement might allow unfettered discretion to reject bids for failure to provide a POA for other bid documents, without bidders having notice of the requirement through the Bid Specifications.

NJTA's revision to Section 102.08 of its Standard Bid Specifications to require a bidder's POA to state the attorney-in-fact's authority to sign and bind the surety company to both the Proposal Bond and the COS does not dictate the outcome here since the modification post-dates the bid opening date for the Project. In light of NJTA's position at oral arguments that Section 102.08 was not ambiguous, we conclude that adding the requirement that a POA specifically authorize the COS was an acknowledgment of the previously absent requirement. Any of NJTA's practical concerns in obtaining assurances that El Sol will execute the Contract and perform its contractual obligations are obviated by Liberty's representation that the POA submitted with El Sol's bid binds it to the COS and to issue the required Contract Bond, coupled with its offer to modify the language of the POA to address the issue.

NJTA does not dispute El Sol's submission that on thirteen prior projects, it had no concerns about the enforceability of the same form of COS provided by Liberty Mutual with El Sol's bid.[4] No factual proffer justifying the change in position appears in the record.

---

[4] We decline to consider El Sol's submission of an October 31 letter from Liberty in furtherance of its equitable estoppel argument since the letter was not before NJTA at the time of its decision.

A-0232-24

We are mindful of the general principle that estoppel against a government entity is disfavored, see Cipriano v. Dep't of Civ. Serv. of State of N.J., 151 N.J. Super. 86, 91 (App. Div. 1977), especially when it would interfere with "essential governmental functions." Vogt v. Borough of Belmar, 14 N.J. 195, 205 (1954). However, the Court has applied estoppel against the government to prevent manifest wrong and injustice. See Meyers v. State Health Benefits Comm'n, 256 N.J. 94, 100 (2023) (citing Gruber v. Mayor & Twp. Comm. of Raritan Twp., 39 N.J. 1, 14 (1962)). Given our decision that NJTA improperly rejected El Sol's bid predicated on the plain language of the Bid Specifications for the Project and the dearth of binding precedent requiring a POA for a COS, an analysis of whether equitable estoppel applies need not be reached.

Any arguments not addressed in this decision are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Reversed and remanded. We do not retain jurisdiction. The stay previously granted is continued for three business days from entry of this decision by the clerk to allow the parties to seek emergent relief from the Supreme Court. Should any party file an emergent application with the Supreme Court, the stay shall continue until the Supreme Court disposes of that application, or until further order of the Court.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18

A-0232-24