55 A.3d 74

NEW JERSEY ASSOCIATION OF SCHOOL ADMINISTRATORS, JAMES F. O'NEILL AND RENE T. ROVTAR, PLAINTIFFS–APPELLANTS, v. CHRISTOPHER D. CERF, IN HIS CAPACITY AS COMMISSIONER OF EDUCATION AND HIS SUCCESSORS, AND KATHLEEN SERAFINO, IN HER CAPACITY AS EXECUTIVE COUNTY SUPERINTENDENT FOR THE COUNTY OF MORRIS, AND THE NEW JERSEY STATE DEPARTMENT OF EDUCATION, DEFENDANTS–RESPONDENTS.

ROBERT H. HOLSTER, PLAINTIFF–APPELLANT, v. CHRISTOPHER D. CERF, IN HIS CAPACITY AS COMMISSIONER OF EDUCATION, ROCHELLE HENDRICKS, ROBERT GILMARTIN, IN HIS CAPACITY AS EXECUTIVE COUNTY SUPERINTENDENT FOR THE COUNTY OF PASSAIC AND HIS SUCCESSORS, AND THE NEW JERSEY STATE DEPARTMENT OF EDUCATION, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued September 20, 2012—Decided October 25, 2012.

Before Judges FUENTES, GRALL and ASHRAFI.

*Maria M. Lepore* argued the cause for appellants in A–4647–10.

*Andrew Babiak* argued the cause for appellant in A–4997–10.

*Michael C. Walters*, Deputy Attorney General, argued the cause for respondents (*Jeffrey S. Chiesa*, Attorney General, attorney; *Melissa H. Raksa*, Assistant Attorney General, of counsel; *Mr. Walters*, on the briefs).

The opinion of the court was delivered by

GRALL, J.A.D.

These separate appeals challenge actions taken by the Commissioner of Education (Commissioner) and three executive county superintendents (ECS or ECSs) in the discharge of their responsibility to review and approve employment contracts that local school districts award to superintendents. *N.J.S.A.* 18A:7–8(j). At issue is the Commissioner's adoption and implementation of amended regulations capping superintendents' salaries based on enrollment. *N.J.A.C.* 6A:23A–1.2, –3.1(e)2. Because the legal issues are the same and the material facts are substantially identical, we address the appeals together.

The questions presented are whether: the salary cap exceeds the authority delegated to the Commissioner by the Legislature in *N.J.S.A.* 18A:7–1 to –16 (*L.* 2007, *c.* 63, §§ 42–58) or violates the Separation of Powers Clause, *N.J. Const.* art. III, ¶ 1; the cap on

salary conflicts with the authority of a local school board to fix its superintendent's salary, *N.J.S.A.* 18A:17–19; application of the salary cap to superintendents whose contracts expired on June 30, 2011 is precluded by *N.J.S.A.* 18A:17–20.1 or –20.2; and the Commissioner violated the rulemaking provisions of the Administrative Procedure Act (the Act), *N.J.S.A.* 52:14B–1 to –24, by directing the ECSs to suspend review of renegotiated contracts pending adoption of the salary caps. Concluding that the answer to each of the foregoing questions is "No," we uphold the agency's actions.

I

These separate lawsuits were initially filed with the Chancery Division in Passaic and Morris Counties. In Passaic, Robert H. Holster, Superintendent for the School District of the City of Passaic, filed the complaint against the Commissioner and that county's ECS, Robert Gilmartin. In Morris, the New Jersey Association of School Administrators, James F. O'Neill, Superintendent for the School District of the Chathams, and Rene Rovtar, Superintendent for the School District of Long Hill Township, filed suit against the Commissioner and that county's ECS, Kathleen Serafino. In conformity with *Rules* 1:13–4 and 2:2–3(a)(2), the cases were both transferred to this court because the action of a State officer, the Commissioner, was challenged. The phrase "individual plaintiffs" is used throughout this opinion to refer collectively to Holster, O'Neill and Rovtar and the term "plaintiffs" is used to refer to the Association and the individuals.

Pursuant to *N.J.S.A.* 18A:7–8(j), "Each [ECS] shall ... [r]eview and approve, according to standards adopted by the commissioner, *all employment contracts* for superintendents of schools ... in school districts within the county, prior to the execution of those contracts[.]" (Emphasis added). Since June 2009, the standards for review and approval have been stated in *N.J.A.C.* 6A:23A–3.1(e)(2). On November 1, 2010, the Commissioner proposed amendments setting a "maximum salary amount" and defining the

term with a schedule of salary caps based on enrollment. 42 *N.J.R.* 2524(a) (amending *N.J.A.C.* 6A:23A–3.1 and the definitional section, *N.J.A.C.* 6A:23A–1.2).

On November 15, 2010, the Commissioner directed each ECS to review and provide information on superintendents' contracts in his or her county, and the Commissioner gave instruction on review of proposed contracts pending approval of the amendments to the regulations:

> Until this review process is completed and the submissions are fully analyzed by me and other executive staff, no superintendent contracts are to be approved.
>
> Furthermore, given pending regulations with respect to Superintendent contracts that will be effective the date those regulations are approved, contracts expiring subsequent to February 7, 2011 should not be renegotiated or extended prior to the effective date of the new regulations.

When the Commissioner proposed the amendments, each of the individual plaintiffs was serving under a contract that was to expire on June 30, 2011. Each of them was either in the process of negotiating, or had already negotiated, conditions of employment under a new contract; none of the negotiated contracts had been approved by the ECS. Rovtar's contract was for a term commencing on July 1, 2011. In contrast, because O'Neill's and Holster's contracts included a renegotiation of the contract expiring on June 30, 2011, which included a retroactive salary increase for the final year, their proposed contracts called for a term commencing prior to July 1, 2011.[1]

---

[1] In O'Neill's case the ECS approved an initial version of the new contract, but that proposed contract was subsequently modified and the new iteration was submitted for approval in November 2010. His brief focuses on the denial of approval of the proposed contract submitted in November 2010, and it presents no argument addressing the initial approval. For that reason, any claim based on that circumstance is deemed abandoned. *Muto v. Kemper Reinsurance Co.,* 189 *N.J.Super.* 417, 420–21, 460 A.2d 199 (App.Div.1983).

To the extent the individual plaintiffs challenge the actions of their respective ECS, as opposed to the Commissioner, we decline to consider a challenge because plaintiffs have failed to exhaust their right of administrative appeal available in *N.J.A.C.* 6A:23A–3.1(f).

In each instance, the base salary for the term commencing July 1, 2011 in the proposed contract was higher than the per-pupil cap for the individual plaintiff's school district as stated in the Commissioner's proposed amendment to the regulations. Holster's negotiated base salary was $218,762.73, and the proposed cap for his district was $177,500. Rovtar's negotiated base salary was $155,000, which is $10,000 more than the proposed cap for her district. O'Neill negotiated a new salary of $217,213, but his district's cap was $165,000.

On February 7, 2011, the date the amended regulation took effect, the ECS for Morris County disapproved the contracts submitted by O'Neill and Rovtar and directed them to submit revised contracts conforming with the cap. When Holster filed his initial complaint in the Chancery Division on January 31, 2011, Passaic County's ECS had not approved or disapproved his contract. Since filing his complaint, O'Neill has retired, but he intends to reapply for his position if the salary cap is invalidated.

II

The standard that governs our review of the questions presented is clear. The judicial role is limited. *In re Petitions for Rulemaking, N.J.A.C. 10:82–1.2 and 10:85–4.1,* 117 *N.J.* 311, 325, 566 *A.*2d 1154 (1989). Administrative action that " 'can be said to promote or advance the policies and findings that served as a driving force for the enactment of th[e] legislation' " it implements is upheld. *In re Certain Amendments to Adopted and Approved Solid Waste Mgmt. Plan of Hudson Cnty. Solid Waste Mgmt. Dist. (Solid Waste),* 133 *N.J.* 206, 216, 627 *A.*2d 614 (1993) (quoting *A.A. Mastrangelo, Inc. v. Comm'r of Dep't of Envtl. Prot.,* 90 *N.J.* 666, 684, 449 *A.*2d 516 (1982)).

One challenging a regulation must rebut the presumption of its validity and reasonableness by establishing that it is "arbitrary, capricious or unreasonable." *N.J. Ass'n of Sch. Adm'rs v. Schundler (Schundler),* 211 *N.J.* 535, 548, 49 *A.*3d 860 (2012) (quoting *Henry v. Rahway State Prison,* 81 *N.J.* 571, 579–80, 410

*A*.2d 686 (1980)). That burden can be met by demonstrating an inconsistency between the regulation and the statute it implements, a violation of policy expressed or implied by the Legislature, an extension of the statute beyond what the Legislature intended, or a conflict between the enabling act and other statutory law that cannot be harmonized. *Id.* at 548–49, 555, 49 *A*.3d 860; *Lourdes Med. Ctr. of Burlington Cnty. v. Bd. of Review,* 197 *N.J.* 339, 376, 963 *A*.2d 289 (2009); *N.J. Ass'n of Sch. Bus. Officials v. Davy (Davy),* 409 *N.J.Super.* 467, 494, 978 *A*.2d 295 (App.Div. 2009).

 In making the foregoing determinations, courts give " 'great deference' " to the agency's " 'interpretation of statutes within its scope of authority.' " *Schundler, supra,* 211 *N.J.* at 549, 49 *A*.3d 860 (quoting *N.J. Soc'y for the Prevention of Cruelty to Animals v. N.J. Dep't of Agric.,* 196 *N.J.* 366, 385, 955 *A*.2d 886 (2008)). That approach is taken in recognition of "the specialized expertise agencies possess to enact technical regulations and evaluate issues that rulemaking invites." *Ibid.*

 When considering a claim that a regulation exceeds delegated authority, "a court 'may look beyond the specific terms of the enabling act to the statutory policy sought to be achieved by examining the entire statute in light of its surroundings and objectives.' " *Ibid.* (quoting *N.J. Guild of Hearing Aid Dispensers v. Long,* 75 *N.J.* 544, 562, 384 *A*.2d 795 (1978)). And when a regulation consistent with the enabling act is challenged on the ground that it is in conflict with a related statute, courts "read both statutes and the relevant regulations together to give them their intended effect" when they can be harmonized. *Id.* at 561, 384 *A*.2d 795. Finally, where the meaning of a statute or regulation is at issue, we give the language its plain meaning on the assumption that the terms reflect what the Legislature intended. *Id.* at 549, 384 *A*.2d 795; *DiProspero v. Penn,* 183 *N.J.* 477, 493, 874 *A*.2d 1039 (2005).

## III

### A

The foregoing standards governing our review of administrative regulations necessarily require careful consideration of the enabling statutes, the regulations and related laws implicated by the regulations. We begin with that inquiry.

The Commissioner adopted these regulations to implement a series of related laws enacted to "reduce property taxes, in part, through oversight and limitation of government spending by school districts." *Davy, supra,* 409 *N.J.Super.* at 471, 978 *A.*2d 295 (discussing *L.* 2007, *c.* 53, 63, 92 and 260 and the implementing regulations).[2] The regulations that were amended to add the salary cap challenged here, *N.J.A.C.* 6A:23A–1.2, –3.1, are included in a chapter entitled "Fiscal Accountability, Efficiency and Budgeting Procedures," *N.J.A.C.* Title 6A, Chapter 23A.

---

[2] The Commissioner explained the relationship between and focus of the laws when first proposing amendments to the regulations in Chapter 23A. The pertinent part follows.

> Take notice that, in compliance with the provisions of Public Law 2007, *c.* 53, Public Law 2007, *c.* 62, Public Law 2007, *c.* 63 and Public Law 2007, *c.* 260, the Commissioner of Education is promulgating amendments and new rules at *N.J.A.C.* 6A:23A *to assure the financial accountability of local public school districts through enhanced State monitoring, oversight and authority,* and *to ensure that each district board of education adopts an annual budget that provides adequate resources to meet the State Constitution's mandate for a thorough and efficient system* of free public schools for all children. Public Law 2007, *c.* 53 established several school district accountability measures, including but not limited to, requirements for receipt of State aid, publication of user-friendly budgets, Commissioner review of agreements for early termination of superintendent's employment contracts, and restrictions and requirements on board and employee travel. . . .
> Public Law 2007, *c.* 63 established the position of Executive County Superintendent whose responsibilities include reviewing and approving the contracts of district superintendents . . . and reviewing and approving district budgets. . . These rules provide standards to be used by the Executive

The Legislature has assigned responsibility for additional oversight of district spending to the Commissioner and the several ECSs. *N.J.S.A.* 18A:7–1 to –16 (*L.* 2007, *c.* 63, §§ 42–58); *see also Davy, supra,* 409 *N.J.Super.* at 477, 978 *A.*2d 295. The ECSs must *"[p]romote administrative* and operational efficiencies and *cost savings* within the school districts in the county while ensuring that the districts provide a thorough and efficient system of education." *N.J.S.A.* 18A:7–8(d) (emphasis added). And, the Commissioner must assess the performance of ECSs based on their ability "to monitor and promote administrative and operational efficiencies ... and on their monitoring of the school districts in the five key components of school district effectiveness," one of which is "fiscal management." *N.J.S.A.* 18A:7–1(b).

The Legislature has directed the Commissioner to develop "standards" for evaluating an ECS's performance in monitoring fiscal management and the other key components of "effectiveness." *Ibid.* One of those factors is "per pupil administrative expenditures." *Ibid.*

A critical component of the oversight by the ECS is review of contracts awarded to superintendents by school districts. Pursuant to *N.J.S.A.* 18A:17–19, a superintendent's salary is set by the board of education. In 2007, the Legislature adopted *N.J.S.A.* 18A:7–8(j), which requires each ECS to "[r]eview and approve, according to standards adopted by the commissioner, *all* employment contracts for superintendents of schools...." (Emphasis added).

The importance of this contract review to the Legislature is further evidenced by statutes amended and enacted in Chapter 53 of the Laws of 2007. For example, *N.J.S.A.* 18A:7F–5.3 requires school districts to submit detailed information on a variety of contract benefits and perquisites; *N.J.S.A.* 18A:11–11 requires a board of education to provide prior notice and a public hearing thirty days before taking action to approve a modification, extension or amendment of a superintendent's contract; and *N.J.S.A.* 18A:17–20.2a requires the Commissioner's approval of contracts

County Superintendents in those reviews and plans. [41 *N.J.R.* 642(a) (emphasis added).]

negotiated in connection with a superintendent's early termination, which the Commissioner may withhold where the compensation is excessive.

The Legislature did not give the Commissioner guidance on the content of the standards for contract review beyond that provided in the 2007 legislation adopted to effectuate oversight of district spending. Rather, pursuant to *N.J.S.A.* 18A:7–16, the Legislature gave the Commissioner authority to adopt "such rules and regulations as the commissioner deems necessary to implement the provisions" of *N.J.S.A.* 18A:7–1 to –15. That grant encompasses the standards for review of superintendent's contracts and the standards for measuring the performance of an ECS. *See also* *N.J.S.A.* 18A:17–20.2a(b) (giving similar general direction—authority to adopt regulations establishing "the allowable parameters of early termination agreements").

As initially adopted, *N.J.A.C.* 6A:23A–3.1(e) required review of superintendents' contracts for comparability with "the salary, benefits and other emoluments contained in the contracts of similarly credentialed and experienced administrators in other districts in the region with similar enrollment, academic achievement levels and challenges, and grade span." It also required review for compliance with specific limitations on benefits and perquisites, such as travel, additional compensation for payment of taxes, severance pay, payments for unused sick and vacation leave, bonuses, and car allowance. *N.J.A.C.* 6A:23A–3.1(e)2–11. Those specific limitations, which also apply to school district business administrators and assistant superintendents, have been upheld. *Schundler, supra,* 211 *N.J.* at 562, 49 *A.*3d 860; *Davy, supra,* 409 *N.J.Super.* at 495, 978 *A.*2d 295.

With the amendments at issue here, the Commissioner supplemented the general comparability criteria with an additional specific limitation—a cap on maximum salary determined by the size of the district's enrollment. *See* 42 *N.J.R.* 2524(a) (proposal); 43 *N.J.R.* 284(a) (adoption). In responding to comments objecting to the proposed caps and their impact on superintendents and quality

education, the Commissioner explained that the caps were needed because of the districts' continued failure to control administrative costs. 43 *N.J.R.* 284(a). The Commissioner further explained that the caps were sufficiently high to attract "high quality" and "talented candidates," noting the range—$125,000 to $175,000, exclusive of permissible merit bonuses—was more than twice the average earned by an individual living in New Jersey, and higher than the median salary for superintendents in Pennsylvania, Delaware and New York. *Ibid.* Acknowledging the possibility that the caps would lead some eligible superintendents to retire early, the Commissioner concluded that early retirements would occur for a limited time and their cost would be offset by a reduction in the cost of future compensation and pension obligations. *Ibid.*

In pertinent part, the operative amendment provides:

> No contract for a superintendent or a superintendent reappointed pursuant to *N.J.S.A.* 18A:17–20.1, ... shall include an annual salary in excess of the *maximum salary amount* plus [additional increments specified].... This paragraph shall be construed consistent with any tenure rights acquired pursuant to *N.J.S.A.* 18A:6–10 et seq.
>
> [*N.J.A.C.* 6A:23A–3.1(e)2 (emphasis added).]

The definitional section, *N.J.A.C.* 6A:23A–1.2, was supplemented to define the term "maximum salary amount" with reference to those caps that range from $125,000 for the superintendent of a district with a total enrollment of 250 or less to $175,000 for an enrollment of 6,501 or more. The definition provides some flexibility for a district with more than 10,000 students, which may apply for a waiver of the $175,000 cap. *Ibid.*

In addition to setting caps on permissible salaries, the Commissioner amended *N.J.A.C.* 6A:23A–3.1(a) to require ECSs to review and approve contracts for "superintendents reappointed pursuant to *N.J.S.A.* 18A:17–20.1." Pursuant to *N.J.S.A.* 18A:17–20.1, a "superintendent shall be deemed reappointed *for another contracted term of the same duration* as the previous contract unless" the board either reappoints the superintendent for a "different term" or gives the superintendent written notice that he or she will not be reappointed by the time specified in the statute. (Emphasis

added). As noted above, *N.J.S.A.* 18A:7–8(j) requires review of "all" contracts.

With that background, we turn to consider plaintiffs' objections to the amended regulations.

## B

■ First, we address the claim that imposition of a salary cap exceeds the authority the Legislature delegated to the Commissioner. This cap based on enrollment is directly and expressly tailored to address a factor the Legislature expressly designated as critical in controlling district spending—"per pupil administrative expenditures." *N.J.S.A.* 18A:7–1(b). Thus, a cap focused on enrollment advances the policies that drove this comprehensive legislative reform. *Solid Waste, supra,* 133 *N.J.* at 216, 627 *A.*2d 614. It is wholly consistent with and furthers the Legislature's goal of controlling excessive spending on administration to facilitate thorough and efficient public education. That purpose is evident in the statutes discussed above. *N.J.S.A.* 18A:7–1(b); *N.J.S.A.* 18A:7–8(d), (j); *N.J.S.A.* 18A:7F–5.3; *N.J.S.A.* 18A:11–11; *N.J.S.A.* 18A:17–20.2a.

As the Commissioner explained in adopting the salary cap amendment, it is necessary to address the districts' continued failure to control costs. In short, the Commissioner had determined that the regulations as initially adopted were not furthering the Legislature's objective. Accordingly, the Commissioner made an adjustment—a salary cap—that conformed with the Legislature's express direction to focus on per-pupil administrative costs.

The well-recognized benefit of a legislature delegating regulatory authority to an administrator with the necessary expertise is the administrator's ability to fashion detailed regulations conforming with " 'policies, objects and standards laid down by the legislature, rather than by having all the details spelled out through the traditional legislative process.' " *Metromedia, Inc. v. Director, Div. of Taxation,* 97 *N.J.* 313, 337, 478 *A.*2d 742 (1984) (quoting *Boller Beverages Inc. v. Davis,* 38 *N.J.* 138, 151, 183 *A.*2d 64 (1962)).

The Commissioner's action was consistent with that principle, and there is nothing arbitrary, capricious or unreasonable in the Commissioner's effort to rein in spending with salary caps based on enrollment.

### C

Plaintiffs also urge invalidation of the salary cap on the ground that it is in direct conflict with *N.J.S.A.* 18A:17–19. That statute provides:

> The board or boards of education employing a superintendent or assistant superintendent of schools shall fix the salar[y] of the superintendent and . . . the salary of a superintendent shall not be reduced during his term of office.

The term of office for these superintendents is "a term of not less than three nor more than five years and expiring July 1" as set by the superintendent's contract with the board. *N.J.S.A.* 18A:17–15.

■ Without question, the salary cap limits a board's authority to fix a salary higher than the cap, but the regulation does not fix the salary. It sets a cap beyond which the board cannot go in fixing a salary.

Moreover, the Legislature, not this salary cap amendment, limited a board's authority to pay as much as it wishes. The Legislature accomplished that by mandating review and approval of "all employment contracts for superintendents" for compliance with standards set by the Commissioner. *N.J.S.A.* 18A:7–8(j). Thus, the question in this case " 'involves the interplay of two or more statutes,' " which we must " 'seek to harmonize . . . under the assumption that the Legislature was aware of its actions and intended' for [the] related laws 'to work together.' " *Schundler, supra,* 211 *N.J.* at 555, 49 *A.*3d 860 (quoting *State ex rel. J.S.,* 202 *N.J.* 465, 480, 998 *A.*2d 409 (2010)).

In *Schundler,* the Court considered tenure laws and more recent statutory amendments, the same statutory amendments implicated here, authorizing regulations that altered specified benefits for some tenured officials. *Id.* at 540–42, 49 *A.*3d 860. The Court concluded that those statutes and the implementing

regulations could and should be read together, harmonized and given "their intended effect." *Id.* at 561, 49 *A.*3d 860.

There is no basis for reaching a different conclusion here. *N.J.S.A.* 18A:17–19 can be read together with *N.J.S.A.* 18A:7–8(j) and *N.J.A.C.* 6A:23A–3.1(e)2 to provide that a district's board may fix a superintendent's salary within the applicable cap. The effect is wholly consistent with the Legislature's primary goal in providing oversight of school district spending and not inconsistent with the board's statutory authority to fix salary.

## D

The individual plaintiffs contend that the salary cap cannot be applied to them because the terms of their prior contracts "were automatically renewed by operation of law." This position is inconsistent with their conduct, and it is not supported by the statutes upon which they rely.

As to their conduct, all three of the individual plaintiffs and the members of their respective boards behaved as if the superintendent's salary was open to negotiation, not a matter dictated by operation of law. In each case, new contracts were negotiated. Thus, their newly negotiated contracts were submitted for approval, as is plainly required by *N.J.S.A.* 18A:7–8(j). *See also N.J.S.A.* 18A:11–11 (requiring a public hearing before a board acts to "renegotiate, extend, amend, or otherwise alter the terms of a contract with a superintendent of schools").

The statutes upon which plaintiffs rely in asserting that the salaries provided in their prior contracts were continued by operation of law are *N.J.S.A.* 18A:17–20.1 and –20.2. *N.J.S.A.* 18A:17–20.1 provides that a superintendent "shall be deemed reappointed *for another contracted term of the same duration* as the previous contract," unless the board has given the superintendent notice of its intention not to reappoint by the date specified in the statute.[3]

---

[3] The individual plaintiffs assume that the one-year notice period stated in *N.J.S.A.* 18A:17–20.1 prior to its amendment effective December 4, 2008, rather

(Emphasis added). *N.J.S.A.* 18A:17–20.2 provides that *"[d]uring the term of an employment contract* ... a superintendent shall not be ... reduced in compensation," except for good cause established. (Emphasis added).

The only contractual term the Legislature addressed in *N.J.S.A.* 18A:17–20.1 is its duration. As this court has previously explained, this statute was enacted in connection with the abolition of lifetime tenure for superintendents appointed after August 24, 1991. *Gonzalez v. Bd. of Educ. of the Elizabeth Sch. Dist.*, 325 *N.J.Super.* 244, 253–54, 738 *A.*2d 974 (App.Div.1999). The Legislature's purpose was to "fortify a superintendent's rights by providing for automatic reappointment to a new 'contracted term of the same duration' if the board fails to give" the required notice and to "provide[ ] a superintendent who has received such notice ample lead time to seek new employment." *Id.* at 254, 738 *A.*2d 974.

*N.J.S.A.* 18A:17–20.1 is silent on conditions of employment on reappointment, such as salary. *See L.* 1991, *c.* 267, §§ 4–5. By its terms, the statute appears to leave those matters to good-faith negotiation. Moreover, nothing in *N.J.S.A.* 18A:17–20.2, which was adopted with *N.J.S.A.* 18A:17–20.1, supports the interpretation that plaintiffs urge. Section 18A:17–20.2 limits the protection for salary to "the term of any employment contract." The term may be for not less than three nor more than five years. *N.J.S.A.* 18A:17–15. Thus, it does not bar reduction in salary under a subsequent contract.

To support their claim that *N.J.S.A.* 18A:17–20.1 renews a superintendent's prior contract by operation of law, plaintiffs also rely on a decision the Commissioner rendered in 2001, which resolved a dispute about reappointment, not salary. *John How-*

---

than the shorter period the statute now provides, controls. *See L.* 2008, *c.* 106, §§ 1–2; *cf. L.* 1991, *c.* 267, § 4. Given our resolution of this question, there is no reason to address the issue. But this decision should not be understood to express agreement with that assumption.

*ard, Jr. v. Bd. of Educ. of East Orange*, C. # 176–01 (June 5, 2001), *aff'd State Bd. of Educ.* (Nov. 7, 2001), *aff'd* Nos. A–1699–01 and A–2584–01 (App.Div. Oct. 11, 2001). Their reliance on that decision is misplaced. True, the Commissioner stated that the "provisions of [the prior] contract renewed by operation of statute." *Id.* at 22. But in that case, consistent with its position that *N.J.S.A.* 18A:17–20.1 did not apply, the board refused to negotiate a new contract.

The Commissioner's decision cannot be understood to permit a superintendent to insist on the same salary simply because he or she was not given timely notice of the board's intention not to reappoint. First, the statute does not say that. Second, application of the Commissioner's decision to absolve a superintendent of the obligation to negotiate in good faith would create an irreconcilable conflict with *N.J.S.A.* 18A:17–20.2, which limits salary protection to the term of an employment contract. Third, that decision must be applied in a manner consistent with the Legislature's explicit direction for review of all contracts awarded to a superintendent. *N.J.S.A.* 18A:7–8(j).

The individual plaintiffs also suggest that their automatic reappointments, and therefore their contracts which they contend automatically renewed by operation of law, were effective on the date that notice of intent not to reappoint was due. But the statute cannot be read to provide more than its terms and purpose require, which is reappointment for a new term that takes effect upon expiration of the prior contract.

### E

Plaintiffs further contend that the Commissioner's adoption of the salary cap violates the State Constitution's Separation of Powers Clause by usurping power committed to the authority of the Legislature. *N.J. Const.* art. III, ¶ 1, art. IV, § 1, ¶ 1. As we understand their collective arguments on this point, the claim is that the Legislature granted the Commissioner the authority to set "general standards" but not to "set salaries," which is some-

thing the Legislature does itself when that is what it intends, and which is part of the Legislature's essential function.

This argument is without sufficient merit to warrant discussion in a written opinion beyond the brief comments that follow. *R.* 2:11–3(e)(1)(E). As noted above, this regulation does not fix the salary of any superintendent; it sets a cap on a superintendent's salary based on the number of pupils enrolled in the district. More important, plaintiffs' argument simply recasts the question whether the Commissioner exceeded the authority delegated by the Legislature. In fact, plaintiffs rely heavily on cases addressing that question.

The Separation of Powers Clause addresses something quite different—instances where executive branch action "is so fundamentally incompatible with our existing laws and statutes as to impair the 'essential integrity' of the constitutional powers of the Legislature." *Commc'ns Workers v. Christie,* 413 *N.J.Super.* 229, 274, 994 *A.2d* 545 (App.Div.2010) (quoting *Massett Bldg. Co. v. Bennett,* 4 *N.J.* 53, 57, 71 *A.2d* 327 (1950)). In this case the Commissioner has done what the Legislature directed—promulgate a regulation setting standards for contract review that will reduce excessive administrative expenditures.

## IV

■ Plaintiffs claim that the Commissioner effectively amended the regulations by issuing the November 15, 2010 directive requiring each ECS to postpone review and approval of contracts. They contend that the temporary suspension required formal rulemaking in conformity with the Act.

Preliminarily, plaintiffs point to no statute or regulation setting a timeframe for contract review and approval. They rely on *N.J.S.A.* 18A:7–8(j), but that statute is silent on the point. Thus, this case does not present the serious question that would be posed if the Commissioner had issued a directive effectively overriding a statute, which the Commissioner could not do. *Commc'ns Workers, supra,* 413 *N.J.Super.* at 274, 994 *A.2d* 545.

Nor does it involve an amendment of a duly adopted regulation, which would require rulemaking. *See N.J.S.A.* 52:14B–2(e) (defining the terms "Administrative rule" and "rule" to include "the amendment or repeal of any rule").

The Commissioner's directive is properly viewed as falling within an exception to the Act's definition of rulemaking—it is an intra-agency or interagency statement. *Ibid.* The Commissioner's temporary suspension of contract review is quite similar to the administrative action that the Supreme Court upheld against a similar challenge in *Citizens for Equity v. New Jersey Department of Environmental Protection,* 126 *N.J.* 391, 599 *A.*2d 507 (1991), *aff'g o.b.* 252 *N.J.Super.* 62, 599 *A.*2d 516 (App.Div.1990). In that case, the Supreme Court rejected a challenge to the Department of Environmental Protection's (DEP) suspension of a legislatively-mandated claims review process pending adoption of new regulations. *Id.* at 398–99, 599 *A.*2d 507. The challenge to the delay was rejected despite the fact that the statute required "prompt and adequate compensation." *N.J.S.A.* 13:1E–101.

The DEP had determined the regulations were too permissive and as a result the fund was at risk of depletion. *Citizens, supra,* 126 *N.J.* at 395–96, 599 *A.*2d 507. Accordingly, it proposed more restrictive regulations and froze the review of claims for 133 days pending their adoption. *Ibid.* The Supreme Court determined that DEP's suspension was an intra-agency action that was exempt from the rulemaking requirements of the Act. *Id.* at 396, 599 *A.*2d 507; *see also Kessler v. F.C.C.,* 326 *F.*2d 673, 680–81 (D.C.Cir.1963) (upholding FCC's temporary "freeze order" on a radio application process pending new broadcasting rules).

We see no basis for reaching a different conclusion here. None of the contracts offered to the individual plaintiffs could take effect without approval of the ECS, even those that included newly negotiated modifications of prior contracts. The only right that the individual plaintiffs had was the right to compensation at the rate provided in their existing contract until its expiration, and that right was not affected in any way. We further note that

there is nothing in this record demonstrating that review of any proposed contract was delayed beyond the date that a superintendent's existing contract expired.

## V

Plaintiffs also urge invalidation of an amendment to *N.J.A.C.* 6A:23A–3.1(e)(10)(iii), which we have not yet discussed. This amendment provides that a superintendent's "merit bonus shall be considered 'extra compensation' for purposes of *N.J.A.C.* 17:3–4.1 and shall not be cumulative." 42 *N.J.R.* 2524(a). They claim that this regulation intrudes upon the authority of the Department of Treasury, Teachers' Pension Annuity Fund, to identify compensation that is creditable toward pension.

The basis for this objection is difficult to discern because this amendment simply repeats what *N.J.A.C.* 17:3–4.1 provides. Pursuant to *N.J.A.C.* 17:3–4.1(a)(1), the only compensation creditable to retirement benefits is "base salary," which excludes "extra compensation." "Bonuses" are among the forms of compensation identified as "extra compensation." *N.J.A.C.* 17:3–4.1(a)(1)(iii).

Although the Commissioner does not have the authority or jurisdiction to resolve pension matters, *Bd. of Trs. v. La Tronica,* 81 *N.J.Super.* 461, 466–69, 196 *A.*2d 7 (App.Div.1963), *certif. denied,* 41 *N.J.* 587, 197 *A.*2d 874 (1964), the congruence of the regulations belies any intention on the part of the Commissioner to usurp such authority. Because the board of the pension fund determines "base salary" by looking to an employer's "contracts, ordinances, resolutions, or other established salary policies," *N.J.A.C.* 17:3–1A.1, this regulation is better understood as the Commissioner's statement on the subject, which the board may consider in deciding the issue. Accordingly, we reject this challenge as well.

The administrative action challenged is affirmed.