**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0701-22

IN THE MATTER OF THE
CHALLENGE OF THE TOWN OF
SECAUCUS TO READOPTION OF
N.J.A.C. 19:7.

_____

Argued April 16, 2024 – Decided July 30, 2024

Before Judges Rose, Smith and Perez Friscia.

On appeal from the New Jersey Sports and Exposition Authority.

Kenneth A. Porro argued the cause for appellant (Chasean, Lamparello, Mallon & Cappuzzo, PC, attorneys; Kenneth A. Porro, of counsel and on the briefs; Catherine R. Salerno, on the briefs).

Jennifer Hradil argued the cause for respondent (Gibbons PC, attorneys; Frederick W. Alworth, on the brief).

PER CURIAM

The Town of Secaucus (Secaucus) appeals the New Jersey Sports and Exposition Authority's (NJSEA) readoption of its regulations on transportation planning. Secaucus contends the NJSEA's readoption process was procedurally deficient. Among other arguments, Secaucus further contends that the NJSEA violated principles of procedural due process. Secaucus also contends the NJSEA was arbitrary, capricious, and unreasonable when it readopted the regulations over Secaucus's written objection. We find Secaucus's arguments without merit, and we affirm.

I.

A.

As background, the NJSEA administers zoning and planning matters within the Hackensack Meadowlands District (District), an area which encompasses fourteen municipalities, including Secaucus.[1] Part of the NJSEA's statutory authority[2] includes assessment and collection of developer fees, designed to ensure adequate transportation infrastructure for new development

_____

[1] The Hackensack Meadowlands District is comprised of the following municipalities: Carlstadt, East Rutherford, Jersey City, Kearny, Little Ferry, Lyndhurst, Moonachie, North Arlington, North Bergen, Ridgefield, Rutherford, Secaucus, South Hackensack, and Teterboro.

[2] Hackensack Meadowlands Transportation Planning District Act of 2015, N.J.S.A. 5:10A-69 to -81 (TPD Act).

projects in the District. These fees are collected in the Meadowlands Transportation Planning District (TPD) Fund (Fund).[3] The Legislature amended the TPD Act in 2015 with N.J.S.A. 5:10A-74(k), requiring that "[a]t least 30% of any development fees collected in accordance with this section shall be used for transportation related projects within the municipality where the development for which a particular fee is collected, is located."

The Legislature delegated authority to the NJSEA to adopt and enforce regulations to effectuate its master plan for physical development of the District. See N.J.S.A. 5:10A-7(b). In 2022, the NJSEA sought readoption of one of those regulations, N.J.A.C. 19:7, entitled, District Transportation Plan Rules for the Hackensack Meadowlands District. Chapter 19:7 "establishe[d] the general provisions for the assessment and collection of development fees . . . ." N.J.A.C. 19:7-2.1.

One section of the regulations, N.J.A.C. 19:7-6.1, provides for the NJSEA's administration of transportation development fees collected by the agency. It states:

> (a) Transportation development fees shall be deposited into the [Fund], an interest-bearing account.

---

[3] N.J.S.A. 5:10A-77.

A-0701-22

1.  The Fund shall be under the control of the NJMC Chief Fiscal Officer.

2.  Payments to and expenditures from the Fund shall follow a first-in/first-out methodology for transportation development fees and expenditures.

(b) The Fund shall be appropriated as follows:

1.  The Fund shall be used to defray the costs of plan elements and allowable administrative costs incurred by the NJMC and Meadowlands Transportation Planning Board for administration, management, development, update, amendment, and supplement of the Meadowlands District Transportation Plan and the Meadowlands Transportation Planning District.

2.  Fund expenditures shall be subject to appropriation by the NJMC Board of Commissioners and certification by the NJMC Chief Fiscal Officer.

N.J.A.C. 19:7-6.1, along with the rest of N.J.A.C. 19:7, was set to expire on November 25, 2022. The NJSEA moved to readopt it in July 2022.

### B.

We summarize the procedural history. On July 15, 2022, the NJSEA issued its rulemaking schedule for the readoption of N.J.A.C. 19:7. The

4

schedule outlined the lifecycle of the rule adoption process, from preparation of the readoption notice through publication of the adopted rule in the New Jersey Register.

On July 21, 2022, the NJSEA submitted a notice of readoption of N.J.A.C. 19:7 to the Governor's Office, which approved the rule on July 27, 2022. The NJSEA then notified the Hackensack Meadowlands Municipal Committee (HMMC)[4] of the proposed readoption of N.J.A.C. 19:7.[5] The HMMC was subject to a statutory thirty-day comment period within which to respond to the notice. See N.J.S.A. 5:10A-9(b).

The HMMC timely responded. On August 29, it voted unanimously to reject the NJSEA's proposed rule readoption. Executive Director Casella memorialized the vote in a memo to the NJSEA the next day. In pertinent part, the memo stated, "[t]he motion to reject was based on the [c]ommittee's belief that there should be some changes made." Casella provided no other written

---

[4] The membership of the HMMC consists of the mayors of the municipalities that comprise the Hackensack Meadowlands District. See supra at 2 n. 1.

[5] The notice consisted of a two-page letter, dated August 2, 2022, addressed to the HMCC chairman, Michael Gonnelli, and its executive director, James Cassella.

explanation for the HMMC's position, but he requested a meeting between the NJSEA and a subcommittee of the HMMC membership.

The NJSEA replied to the memo on September 6, 2022. Adam Levy, NJSEA's Vice President of Legal and Regulatory Affairs, wrote to Gonelli and Cassella. In the letter, Levy summarized his understanding of HMMC's objections to readoption. The letter stated in relevant part:

> The chief concern of the HMMC members appears to be the administration of the Transportation Planning District (TPD) Fund, including the requirement that at least 30% of the development fees collected be used for transportation-related projects within the District municipality where the development, for which a particular fee was collected, is located.
>
> The HMMC should be aware that this requirement regarding the municipal apportionment of a percentage of the collected funds is statutory, and not regulatory. The Committee's rejection of the proposed regulatory readoption will not change the relevant legislative provision, which can be found within the [TPD Act] at N.J.S.A. 5:10A-74.
>
> . . . .
>
> Contrary to [counsel's] assertion at the meeting, the NJSEA has been completely transparent regarding the accounting and use of TPD Fund. In fact, the NJSEA regularly supplies the HMMC membership with updated detailed accounting summaries, which show how those funds are used for project costs within the District municipalities. Furthermore, municipal

6

representatives have been invited to and regularly attend both. Meadowlands Transportation Planning Board meetings and stakeholder group meetings, where future planning for the Hackensack Meadowlands Transportation Planning District and use of TPD funds is highlighted and discussed.

It is important to note that the purpose of this readoption is only to prevent the regulations from expiring and no changes are proposed. This readoption is to ensure that the programs and, projects under the TPD Act, including the collection of development fees, can continue to operate.

The record shows the September 22 The NJSEA Board agenda contained just one land use related item: No. 2022-35, the readoption of its District Transportation Plan Rules, codified in N.J.A.C. 19:7. The readoption resolution was listed as the seventh action item for the board, immediately after public participation.

At the meeting, HMMC's counsel opposed passage of resolution No. 2022-35 and readoption of the rule as presented by the NJSEA Board. HMMC proposed an amendment to the rule, which stated, "[the NJSEA] shall distribute the Meadowlands Transportation Funds pursuant to N.J.S.A. 5:10A-74(k)'s 30% within the municipality statutory formula." The board rejected HMMC's proposed amendment, unanimously passed Resolution No. 2022-35, and readopted the rule. The record shows Resolution No. 2022-35 authorized

NJSEA staff to submit the notice of readoption to the Office of Administrative Law for publication in the New Jersey Register, a ministerial task which it completed.

On appeal, Secaucus's primary arguments are that the NJSEA's re-adoption of N.J.A.C. 19:7 violated due process and frustrated the development funding scheme set forth in N.J.S.A. 5:10A-74(k). For the first time on appeal, Secaucus contends N.J.A.C. 19:7 provides no mechanism for municipalities that are part of the Transportation District to apply for a receive their share of developer fees collected by the NJSEA and held by the fund.

II.

Appellate courts' standard of review of an agency's rulemaking under the Administrative Procedure Act, N.J.S.A. 52:14B-131 to -31 (APA) is well settled. Animal Prot. League of N.J. v. N.J. Fish & Game Council, 477 N.J. Super. 145, 160 (App. Div. 2023). "Courts afford an agency 'great deference' in reviewing its 'interpretation of statutes within its scope of authority and its adoption of rules implementing' the laws for which it is responsible." N.J. Ass'n of Sch. Adm'rs v. Schundler, 211 N.J. 535, 549 (2012) (quoting N.J. Soc'y for Prevention of Cruelty to Animals v. N.J. Dep't of Agric., 196 N.J. 366, 385 (2008)). This deference "stems from the recognition that agencies have the

specialized expertise necessary to enact regulations dealing with technical matters and are 'particularly well equipped to read and understand the massive documents and to evaluate the factual and technical issues that . . . rulemaking would invite.'" Animal Prot. League of N.J., 477 N.J. Super. at 160 (quoting N.J. State League of Muns. v. Dep't of Cmty. Affs., 158 N.J. 211, 222 (1999)). Thus, "an agency's regulations are presumed 'valid and reasonable.'" Ibid. (quoting N.J. Soc'y for Prevention of Cruelty to Animals, 196 N.J. at 385).

We "may not, however, abdicate our 'function to assure that agency rulemaking conforms with basic tenets of due process, and provides standards to guide both the regulator and the regulated.'" Ibid. (quoting N.J. Soc'y for Prevention of Cruelty to Animals, 196 N.J. at 386). "In assessing a regulation's validity, we therefore must consider whether the administrative agency complied with the APA's provisions 'and due process requirements.'" Ibid. (quoting In re Provision of Basic Generation Serv. for Period Beginning June 1 2008, 205 N.J. 339, 347 (2011)).

An agency's decision should be upheld "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." In re Herrmann, 192 N.J 19, 27-28 (2007). "When an agency violates the express policy of its enabling act, the agency action may be deemed arbitrary

and capricious." Caporusso v. N.J. Dep't of Health & Senior Servs., 434 N.J. Super. 88, 103 (citing Pub. Serv. Elec. & Gas v. N.J. Dep't of Env't Prot.,101 N.J. 95, 103(1985)). Our "[i]ntervention is warranted when the action is unsupported or unaccompanied by reasonable explanation." Ibid. (citing Pub. Serv. Elec. & Gas, 101 N.J. at 103).

## III.

Secaucus first argues that the NJSEA violated principles of due process when it readopted N.J.A.C. 19:7. We are not persuaded.

N.J.S.A. 52:14B-5.1(c) of the APA governs the readoption of state agency rules. It states in pertinent part:

> [A]n agency may continue in effect an expiring rule for a seven-year period by filing a public notice with the Office of Administrative Law for publication in the New Jersey Register at least 30 days prior to the expiration date of the rule. The notice pursuant to this paragraph shall include the citation for the rule, a general description of the rule, the specific legal authority under which the rule is authorized, and the new expiration date of the rule. The notice pursuant to this paragraph shall be effective upon filing with the Office of Administrative Law.

The record shows that the NJSEA timely sought and received the HMMC's input on the proposed rule before its public meeting on September 22.[6] At the meeting, the HMMC stated its public opposition to the rule and its accompanying enabling resolution, even proposing an amendment. The NJSEA voted to adopt the resolution over HMMC's objection and submitted the notice of readoption to the Office of Administrative Law on October 14, approximately six weeks prior to expiration of section 19:7. The record further shows the notice satisfied the requirements of section 14B-5.1(c) of the APA, containing the cited authority for the rule, its description, its specific legal authority, and the rule's new expiration date, October 14, 2029. We are satisfied, after a careful review of the record, that the NJSEA provided Secaucus proper due process throughout the readoption timeline.

Secaucus next posits that N.J.A.C. 19:7-6.1 should contain the requirement that "at least 30% of the development fees collected be used for transportation-related projects within the District municipality where the

---

[6] See N.J.S.A. 5:10A-9(b), requiring the NJSEA to provide the proposed readoption to the HMMC "prior to final action." The HMMC had thirty days to state its position on the proposed readoption and, to do so, in writing. Regardless of the HMMC's position, the NJSEA has the statutory power, upon "an affirmative vote of the majority of its members" to act on any "matter submitted to the [HMMC]."

development, for which a particular fee was collected, is located." Without this amendment, which it offered at the September 22 board meeting, Secaucus contends the regulation frustrates the purpose of the TPD Act, specifically, N.J.S.A. 5:10-74(k). We find its argument wholly without merit. We offer brief comment.

"It has been a longstanding principle that 'the grant of authority to an administrative agency is to be liberally construed . . . to enable the agency to accomplish its statutory responsibilities.'" In re Adoption of N.J.A.C. 17:1-6.4, 454 N.J. Super. 386, 395 (App. Div. 2018) (quoting N.J. Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562 (1978)). "[A] challenger must 'demonstrat[e] an inconsistency between the regulation and the statute it implements, a violation of policy expressed or implied by the Legislature, an extension of the statute beyond what the Legislature intended, or a conflict between the enabling act and other statutory law that cannot be harmonized.'" Hackensack Riverkeeper v. N.J. Dep't of Env't Prot., 443 N.J. Super. 293, 302 (App. Div. 2015) (second alteration in original) (quoting N.J. Ass'n of Sch. Adm'rs v. Cerf, 428 N.J. Super. 588, 596 (App. Div. 2012)).

N.J.S.A. 5:10-74(k) establishes a percentage of the development fees that are to be used for a specific purpose. It states, "[a]t least 30% of any

development fees collected in accordance with this section shall be used for transportation related projects within the municipality where the development, for which a particular fee was collected, is located." The simply written statute clearly identifies a percentage of collected development fees to be used, and where to use them. It does not specify when the fees are to be used, or the administrative method for dispersing them.

However, the contested regulation answers those questions. A plain reading of N.J.A.C. 19:7-6.1(a) reveals the TPD Fund's mechanism for depositing development fees, identifies the accounting method it must use to track expenditures, and designates a responsible official to manage the collected fees. N.J.A.C. 19:7-6.1(b) restricts use of the funds and makes expenditures subject to approval by the board. The regulation dovetails neatly with N.J.S.A. 5:10-74(k) and cannot be said to be inconsistent in any way. Secaucus offers no authority or even sound argument to the contrary.

For the first time before us, Secaucus argues that N.J.A.C. 19:7 lacks adequate standards to guide the NJSEA's allocation of the TPD Fund. We may "decline to consider issues not properly presented to the trial court when an opportunity for such a presentation was available 'unless we find the issues raised on appeal go to the jurisdiction of the trial court or concern matters of

13

great public interest.'" Berardo v. City of Jersey City, 476 N.J. Super. 341, 344 (App. Div. 2023) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)). We decline to do so here.

Finally, to the extent not addressed, Secaucus's remaining arguments lack sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION